HANNA MINING COMPANY,
Relator (C9–85–663),

Eveleth Expansion Company, et al.,
Relators (C7–85–757),

v.

MINNESOTA PUBLIC UTILITIES
COMMISSION, Respondent,

Minnesota Power & Light Company,
Intervenor, Respondent (C7–85–757).

Nos. C9–85–663, C7–85–757.

Court of Appeals of Minnesota.

Oct. 22, 1985.

Review Denied Dec. 30, 1985.

Lawrence G. Acker, Patrick J. Whittle, LeBoeuf, Lamb, Leiby & MacRae, Washington, D.C., Robert S. Lee, Mackall, Crounse & Moore, Minneapolis, for Hanna Min. Co.

James J. Ryan, Steer, Strauss, White & Tobias, Cincinnati, Ohio, R.C. Hemmersbaugh, Reserve Mining Co., Silver Bay, for Eveleth Expansion Co., et al.

Hubert H. Humphrey, III, Minn. Atty. Gen., Karl W. Sonneman, Sp. Asst. Atty. Gen., St. Paul, for Minn. Public Utilities Com'n.

James R. Habicht, Karla A. Olson, Duluth, James T. Jarvis, Sp. Asst. Atty. Gen., St. Paul, for Minnesota Power & Light Co., intervenor.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK, and HUSPENI, JJ.

## OPINION

POPOVICH, Chief Judge.

Hanna Mining Company appeals from a Minnesota Public Utilities Commission order approving the Minnesota Power & Light Company's (MP's) conservation improvement program and an order denying reconsideration and rehearing. Eveleth Expansion Company, Eveleth Taconite Company (Eveleth) and Reserve Mining Company (Reserve) also appeal from the same two orders. This court consolidated the appeals. Hanna contends the MPUC is required to order a contested case proceeding before approving a conservation improvement program and the MPUC failed to follow appropriate procedures. Eveleth and Reserve make the same contentions and in addition claim the MPUC engaged in improper rulemaking when it defined the words "significant investments" contained in Minn.Stat. § 216B.241, subd. 2. We remand.

## FACTS

In 1983, the legislature amended Minn. Stat. § 216B.241 to require the MPUC to:

> insure that every public utility with operating revenues in excess of $50,000,000 operate one or more programs * * * which make significant investments in and expenditures for energy conservation improvements.

1983 Minn.Laws ch. 179, § 7 (codified at Minn.Stat. § 216B.241, subd. 2 (1984)). In 1983, the MPUC, by order, outlined a procedure it would use to meet its responsibilities under Minn.Stat. § 216B.241 and asked interested parties to submit comments. It also found that MP would be among those facilities subject to Minn.Stat. § 216B.241, subd. 2.

MP provides electric utility service to a substantial area in central and northeastern Minnesota. Among its customers are the taconite companies located on the Mesabi Iron Range. Relators purchase electricity from MP under its large power tariff.

After receiving the initial comments requested in October 1983, the MPUC ordered the utilities submit conservation improvement programs. MP filed a proposed conservation improvement program. A number of organizations and customers made comments. Hanna objected to the MPUC's proposed decisionmaking process

and requested formal evidentiary proceedings.

The MPUC held a public meeting in April 1984. Hanna, Eveleth and Reserve attended and made comments. Each submitted written comments stating the conservation improvement programs could not be adopted without contested case hearings. Hanna also provided specific comments on each of the proposed programs.

In June 1984, the MPUC issued a notice of supplemental procedures, noting a "wide divergence of opinions among the participants concerning a whole host of issues." It concluded its procedures should be modified. The MPUC directed the utilities to refine their proposals in accordance with the MPUC's general goals and the concerns of other parties. It ordered a period of negotiation

> to allow the participants to find what common ground exists and to more adequately reflect the legislative directive and correspond to the Commission's goals.

The MPUC also created a task force and specifically asked it to determine what would constitute "significant investments in and expenditures for energy conservation improvements" under Minn.Stat. § 216B.241, subd. 2.

In August 1984, MP submitted its negotiated proposal. The task force submitted its final report in September and included recommended criteria to be used in determining what "significant investments" should be for a given utility. By order dated February 19, 1985, the MPUC ordered a $142,000 first year conservation improvement program for MP. The program included a super insulation retrofit demonstration, weatherization technical assistance, a residential load survey, shared savings bank marketing research, a neighborhood energy organization network, Aurora neighborhood energy workshop, and electric water heater insulations. In making its determination of what constitutes "significant investments in and expenditures for energy conservation improvements" the MPUC found the task force

recommendations to be "generally appropriate" and adopted specific criteria.

Hanna, Eveleth and Reserve sought a rehearing and reconsideration of the February 19, 1985 order. The requests were denied.

### ISSUES

1. Was a contested case proceeding required before approving MP's energy conservation program?

2. Were procedures properly adopted?

3. Did the MPUC apply an interpretive rule not properly adopted under the Administrative Procedures Act?

### ANALYSIS

1. Hanna, Eveleth and Reserve contend that the MPUC is required by both statute and the Minnesota and federal constitutions to order a contested case proceeding before approving an energy conservation improvement program.

After Hanna, Eveleth and Reserve filed their appeals and initial briefs, but before the MPUC filed its responsive brief, this court decided the issue raised in another matter. In *In re Implementation of Utility Energy Conservation Improvement Programs*, 368 N.W.2d 308 (Minn.Ct. App.1985), we held that a ratepayer had neither a statutory nor a constitutional right to a contested case proceeding before the MPUC orders a conservation improvement program. That decision was not appealed to the supreme court and is controlling here.

2. Hanna, Eveleth and Reserve also contend that the MPUC did not properly adopt the procedures it used. This issue was also raised in *In re Implementation of Utility Energy Conservation Improvement Programs*, where we held the MPUC erred by not properly adopting rules relating to its procedures as required by Minn. Stat. § 14.06. *Id.* at 314.

The MPUC acknowledges it should have established procedural rules and is currently doing so. Nevertheless, it argues even

though it had failed to promulgate procedural rules prior to approving MP's conservation improvement program, relators were not injured by the lack of procedural rules and this court should find harmless error.

■ We do not agree the error is harmless. This court may remand a case for further proceedings if

the substantial rights of the petitioners may have been prejudiced because the administrative * * * decisions are * * * [m]ade upon unlawful procedure * * *.

Minn.Stat. § 14.69 (1984). Minn.Stat. § 14.06 requires an agency to adopt procedural rules when its procedures directly affect the rights or procedures available to the public. The statutory right to rules constitutes a substantial right of Hanna, Eveleth and Reserve, which was prejudiced by the MPUC's failure to adopt rules. Therefore, we remand.

3. Eveleth and Reserve contend the MPUC erred by applying an interpretive rule not properly adopted under the Administrative Procedures Act. Minn.Stat. §§ 14.01–.69 (1984).

In its February 19 order the MPUC said: In analyzing the program, the Commission has used the recommendations of the September 1984 Conservation Improvement Program Task Force Final Report to the Minnesota Public Utilities Commission. In determining what constitutes "significant investments in and expenditures for energy conservation improvements" the Commission found the Task Force's method of analysis to be generally appropriate when the required information was available.

The MPUC said it "will consider the following types of information in determining whether a program constitutes a significant investment" under Minn.Stat. § 216B.241, subd. 2.

The first is a practical estimate of potential cost effective conservation improvements in relevant end uses throughout a utility's service area, constrained by what is an achievable market penetration. Second, the Commission has considered the following additional factors when determining the significance of MP's CIP plan:

1. Short and long term impact on rates.

2. Total dollars spent on CIP programs annually and over the life of the programs and expressed as a percentage of gross revenues.

3. Number of utility customers, including number of low income and renter participants, as well as participation expressed as a percentage of the total number of customers who are eligible for the program.

Taken together, these factors allow the Commission to evaluate the extent and impact of the utility's efforts to promote energy conservation. Significant investment in conservation must recognize not only all cost effective steps to achieve this goal but also the resources available to aid conservation and the persons, particularly low income and renter customers, that can be helped by conservation programs. By giving consideration to all these factors, the Commission can determine that significant investments are being made on conservation improvements.

■ Minn.Stat. § 14.05 requires an agency to "adopt * * * its rules in accordance with the procedures specified in sections 14.01 to 14.70." Minn.Stat. § 14.05, subd. 1 (1984). A rule

means every agency statement of general applicability and future effect * * * adopted to implement or make specific the law enforced or administered by it * * *.

Minn.Stat. § 14.02, subd. 4 (1984). Interpretive rules are those which are promulgated to make specific the law enforced or administered by an agency. *Minnesota-Dakotas Retail Hardware Association v. State*, 279 N.W.2d 360 (Minn.1979).

■ The MPUC's statement of criteria for determining what constitutes "significant investments in and expenditures for energy conservation improvements" falls within the definition of an intepretive rule. It is subject to statutory rulemaking proce-

dures. MPUC's failure to comply with necessary procedures in adopting its criteria for analyzing significant investment constitutes a further reason to remand. *Cf. White Bear Lake Care Center, Inc. v. Minnesota Department of Public Welfare,* 319 N.W.2d 7 (Minn.1982).

## DECISION

A ratepayer has neither a statutory nor a constitutional right to a contested case proceeding when the MPUC orders a conservation improvement program. MPUC's failure to properly adopt procedural rules prejudiced a substantial right of Hanna, Eveleth and Reserve. The MPUC's statement of criteria for determining what constitutes "significant investments in and expenditures for energy conservation improvements" falls within the definition of an interpretive rule.

Remanded.