**In the Matter of the ALLEGED LABOR LAW VIOLATION OF CHAFOULIAS MANAGEMENT CO., d/b/a Radisson Plaza Hotel, Rochester.**

No. C0–97–931.

Court of Appeals of Minnesota.

Dec. 16, 1997.

Review Denied Feb. 19, 1998.

John P. Haberman, Steven C. Miller, Law Offices of Martin L. Garden, Minneapolis, for Relator Chafoulias Management Company.

Hubert H. Humphrey III, Attorney General, Susan C. Gretz, Assistant Attorney General, St. Paul, for Respondent Commissioner of Labor and Industry.

Considered and decided by KALITOWSKI, P.J., and WILLIS and THOREEN,* JJ.

## OPINION

WILLIS, Judge.

Relator received a Labor Law Violation and Order to Comply from the Commissioner of Labor and Industry for, inter alia, failing to pay its banquet employees minimum wages in violation of Minn.Stat. § 177.24, subd. 2 (1996), and failing to distribute to employees the entire amount charged as a gratuity in violation of Minn.Stat. § 177.24, subd. 3 (1996). Relator moved to dismiss the order. An administrative law judge concluded that relator had violated the statutes and recommended that the order be enforced and the employees paid the amounts due them. Relator appealed to the commissioner, who upheld the minimum wage payments, reduced the payments for withheld gratuities, held that all banquet employees were entitled to gratuities, and determined that the settlement agreements reached between relator and some employees were null and void. Because we see no error of law in the commissioner's determinations, we affirm.

## FACTS

Relator Chafoulias Management Co., d/b/a Radisson Plaza Hotel, Rochester, owns and operates a hotel and employs approximately 175 people. Among its business activities is providing banquet facilities.

During the period relevant to this action, April 1993 to April 1995, banquet customers paid a 16% service charge. Before February 1995, the bills customers received for banquets broke this charge down to a 5% "service charge" and an 11% "gratuity"; thereafter, the bills showed a 12% "banquet service fee" and a 4% "service charge." At all relevant times, of the 16% in extra charges paid by customers, 9.6% went to the employees; relator retained 6.4%. Relator did not tell customers that the full amounts they paid as gratuities, service charges, or banquet service fees would not be distributed to employees. Although the applicable minimum wage was $4.25, relator paid banquet servers a base rate of between $3.40 and $3.95 per hour until February 1995, supplemented by an amount referred to sometimes as a "gratuity" and sometimes as a "commission."

The Department of Labor and Industry (the department) received written complaints regarding relator's methods of paying its banquet employees. After investigation, the Commissioner of Labor and Industry (the commissioner) cited relator for, inter alia, failing to pay minimum wages and failing to distribute the entire amounts it charged as gratuities and ordered relator to comply.

The department twice wrote to relator's employees, advising them that it was pursuing claims against relator, but employees had the right to pursue the claims independently and to opt out of the department's case against relator, and providing them with a form to be returned if they wished to opt out. A number of employees returned the forms and reached individual settlements with relator.

An administrative law judge (ALJ) concluded that (1) relator violated applicable statutes in failing to pay minimum wages and in failing to distribute to both direct-service employees and indirect-service employees the entire amounts it charged as gratuities, service charges, or banquet service fees; (2) the entire amounts of the extra charges were gratuities, and (3) although the settlements relator reached with some employees were void as a matter of law, the amounts payable to those employees could be reduced by

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

amounts already paid pursuant to the settlements.

The commissioner agreed with the ALJ on all issues except the amount of the gratuity restitution payments. Because he found that only 12%, not 16%, of the charges in question were gratuities, gratuity restitution payments were set at $40,724.96.

## ISSUES

1. Did the commissioner err in determining that extra charges of 12% paid by relator's customers and distributed in part to relator's employees were gratuities within the meaning of Minn.Stat. § 177.23, subd. 9, and Minn. R. 5200.0080, subp. 4a?

A. Did relator violate Minn.Stat. § 177.24, subd. 2, by applying gratuities toward payment of minimum wages?

B. Did relator violate Minn.Stat. § 177.24, subd. 3, by retaining gratuities?

2. Were relator's indirect service employees, as defined under Minn. R. 5200.0080, subp. 6, entitled to gratuity payments under Minn.Stat. § 177.24, subd. 3?

3. Did the commissioner correctly determine that the settlements reached between relator and its employees were null and void?

4. Was relator deprived of due process by the commissioner's failure to promulgate rules?

## ANALYSIS

**Standard of Review**

[D]ecisions of administrative agencies enjoy a presumption of correctness, and deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience.

*Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977).

**1. Were the 12% charges at issue gratuities?**

Minn.Stat. § 177.23, subd. 9 (1996), defines "gratuities" as:

monetary contributions received directly or indirectly by an employee from a guest, patron, or customer for services rendered and includes an obligatory charge assessed to customers, guests or patrons which might reasonably be construed by the guest, customer, or patron as being a payment for personal services rendered by an employee and for which no clear and conspicuous notice is given by the employer to the customer, guest, or patron that the charge is not the property of the employee.

This definition is amplified by Minn. R. 5200.0080, subp. 4a (1995):

For purposes of Minnesota Statutes, section 177.23, subdivision 9, obligatory charges which might reasonably be construed by the guest, customer, or patron as a sum to be given to an employee as payment for personal services rendered, include, but are not limited to, service charges, tips, gratuities, and/or surcharges which are included in the statement of charges given to the customer.

Relator asserts that the 12% charges paid by its customers and later distributed in part to employees were not gratuities. To support this assertion, relator relies on *In re Alleged Labor Law Violation of Gangelhoff Investments, Inc. d/b/a Holiday Inn, Bemidji,* OAH Docket No. 5–1900–7252–2 (1993).[1] Even if *Gangelhoff* had precedential value, it is distinguishable on both its facts and the issues it addressed: *Gangelhoff* involved 33% "banquet service charges," of which the employer distributed approximately 60% to direct service employees (waiters, waitresses, and bartenders) and the balance to other staff. The issues in *Gangelhoff* were whether the employer erred in distributing a portion of the service charges to other staff instead of distributing 100% to direct-service employees and, if so, whether the employer was obliged to pay its direct-service employees an amount equal to the erroneous distribution to other staff.

*Gangelhoff* held that the 33% charge was not a gratuity within the meaning of Minn. Stat. § 177.23, subd. 9, because, although customers were not notified that the 33%

1. There appears to be no relevant Minnesota appellate court law.

charge would not be distributed solely to direct-service employees,

> it strains credulity to assert that customers in this rural area thought the 33% fee was a mandatory unshared tip for a few direct servers.

Here, the amount in question is 12%, well within the normal range for a tip. *Gangelhoff* does not support the proposition that a 12% charge is not a gratuity.

Relator also argues that the amounts it paid its employees in addition to base wages were commissions, not gratuities, citing *Mechmet v. Four Seasons Hotels, Ltd.*, 639 F.Supp. 330, 338 (N.D.Ill.1986) (holding that banquet waiters were commissioned employees to whom the federal overtime provision did not apply), *aff'd*, 825 F.2d 1173, 1178 (7th Cir.1987).[2] *Mechmet* observed that a 16% banquet service charge was not a tip or gratuity within the meaning of two federal regulations:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity.

29 C.F.R. § 531.52 (1984), and

> where negotiations between a hotel and a customer for banquet facilities include amounts for distribution to employees of the hotel, the amounts so distributed are not counted as tips.

29 C.F.R. § 531.55(a) (1984), *cited in Mechmet*, 639 F.Supp. at 338. These regulations are at variance with Minn.Stat. § 177.23, subd. 9, which provides that gratuities include "an obligatory charge assessed to customers * * *" and Minn. R. 5200.0080, subp. 4a, which provides that obligatory charges include "service charges, tips, gratuities, and/or surcharges * * *." *Mechmet* is therefore distinguishable on the basis of the

law it applies; relator's reliance on the case is not persuasive.

■ Relator offers no convincing support for its argument that the amounts collected from its customers as gratuities or service charges were not in their entirety gratuities within the meaning of Minnesota law. We conclude that the 12% charges at issue were gratuities.

**A. Violation of Minn.Stat. § 177.24, subd. 2 (1996).**

■ Minn.Stat. § 177.24 (1996) (amended 1997) provides that:

> Subd. 1(b) * * * [E]very large employer must pay each employee wages at a rate of at least $4.25 an hour.
>
> * * * *
>
> Subd. 2. * * * No employer may directly or indirectly credit, apply, or utilize gratuities towards payment of the minimum wage set by this section * * *.

It is undisputed that the base wages of relator's employees were less than the minimum wage and were supplemented by amounts, variously referred to as "gratuities" or "commissions," which were taken from the extra charges paid by customers. In light of our holding that these were gratuities, relator violated the statute by applying them to payment of minimum wages.

**B. Violation of Minn.Stat. § 177.24, subd. 3 (1996).**

■ Minn.Stat. § 177.24, subd. 3 (1996), provides:

> [A]ny gratuity received by an employee or deposited in or about a place of business for personal services rendered by an employee is the sole property of the employee. No employer may require an employee to contribute or share a gratuity received by the employee with the employer or other employees or to contribute any or all of the gratuity to a fund or pool operated for the benefit of the employer or employees. * * * [An] agreement to share gratuities must be made by

**2.** Again, there appears to be no relevant Minnesota case law. We note that *Mechmet*, like *Gan-* *gelhoff*, is not precedent binding on this court.

the employees free of any employer participation. The commissioner may require the employer to pay restitution in the amount of the gratuities diverted.

Our determination that the 12% charges were gratuities compels the conclusion that relator violated the statute by diverting part of the 12% to itself.

## 2. Gratuities paid to indirect-service employees.

■ Minn. R. 5200.0080, subp. 6 (1995), distinguishes between a direct-service employee, "one who in a given situation performs direct service for a customer and [who] is to be considered a tipped employee," and an indirect-service employee "who assists a direct service employee * * * [including] bus people, dishwashers, cooks, or hosts." The commissioner concluded that, because Minn. Stat. § 177.24, subd. 3, does not distinguish between direct-service employees and indirect-service employees, all banquet employees were entitled to share in the gratuities paid by banquet customers.

Relator argues that *Gangelhoff* somehow estops the ALJ here from holding that indirect-service employees are entitled to gratuities. *Gangelhoff* is distinguishable, however; it did not concern diverting gratuities from employees to the employer, but rather concerned the manner of dividing gratuities among employees. The effect of its holding was that direct-service and indirect-service employees shared gratuities.

Moreover, relator cites no support for its suggestion that an ALJ's decision in one case binds other ALJs deciding subsequent cases. Relator also claims that the department is bound by its reference to "gratuities due to direct service employees, in violation of Minn.Stat. § 177.24, subd. 3 * * * *" in its original order for hearing. Again, there is no support for the position that the language

of an original order for hearing estops a department from making more specific allegations at subsequent stages. Minn.Stat. § 177.24, subd. 3, does not specify direct-service employees; it refers only to employees generally in precluding employers from withholding gratuities. Relator violated the statute when it withheld gratuities from any employee. The commissioner did not err in holding that "[a]ll employees who had gratuities diverted are entitled to restitution."

## 3. The settlement agreements.

■ Relator contends that the settlement agreements it reached with some employees deprived the department of jurisdiction over those employees' claims and that the commissioner engaged in improper rulemaking by holding the settlements null and void.[3] But enforcement of Minn.Stat. § 177.24, subds. 2, 3, does not depend on the consent of affected employees.[4] The commissioner has not only the right, but also the obligation to enforce the statutes. *See, e.g.,* Minn.Stat. § 177.24, subd. 3 ("[t]he commissioner may require the employer to pay restitution in the amount of the gratuities diverted"); Minn.Stat. § 177.27, subd. 7 (1996) (after finding a violation, "[t]he commissioner shall order the employer to pay to the aggrieved parties back pay, gratuities, and compensatory damages"). Relator cites no authority for the view that the commissioner's duty is abrogated by employer-employee settlements. Moreover,

> [a]n agreement between the employee and the employer to work for less than the applicable wage is not a defense to [an] action [for violation of the minimum wage and gratuity laws].

Minn.Stat. § 177.27, subd. 8 (1996). The settling employees in effect agreed to accept less than minimum wage plus gratuities for the hours they had worked. Such agree-

---

3. The commissioner also held that amounts relator had paid out to the employees with whom it had settled could be set off against the amounts still owing to those employees.

4. *Cf. Meyer v. Best Western Seville Plaza Hotel,* 562 N.W.2d 690, 693 (Minn.App.1997) (holding that employees may not bring private cause of action under Minnesota Fair Labor Standards Act to recover gratuities because act does not

include gratuities within definition of wages), *review denied* (Minn. June 26, 1997); *Olson v. Moorhead Country Club,* 568 N.W.2d 871, 875 (Minn.App.1997) (holding that employees do not have cause of action under theories of either conversion or money had and received for gratuities to which they are entitled under MFLSA), *review denied* (Minn. Oct. 31, 1997).

ments do not abrogate either relator's obligation to pay its employees in compliance with the law or the commissioner's obligation to order relator to do so.

The commissioner did not err in refusing to accept the settlement agreements as dispositive of the settling employees' claims against relator.

### 4. The department's failure to promulgate rules.

■ We note initially that relator did not raise the issue of failure to promulgate rules before the commissioner: it is neither mentioned in the exceptions filed nor argued in the accompanying memorandum. Therefore, the issue is not properly before this court, *see Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988), but we address it in the interest of completeness. *See* Minn. R. Civ.App. P. 103.04 ("the appellate courts * * * may review any other matter as the interest of justice may require.").

The ALJ's recommendation stated that parties wanting to file exceptions and to present arguments to the commissioner should contact the commissioner "to ascertain the procedure for filing exceptions and presenting argument." Personnel of the commissioner's office told relator that no rules had been promulgated, but that rules would be formulated and sent to relator. Relator received instead only a letter giving the deadline for serving and filing exceptions. Relator's exceptions were timely served and filed.

■ Relator now contends that the absence of rules deprived relator of due process, citing Minn.Stat. § 14.06(a) (1996), which provides:

Each agency shall adopt rules * * * setting forth the nature and requirements of all formal and informal procedures related to the administration of official agency duties to the extent that those procedures directly affect the rights of or procedures available to the public.

A contested case hearing in which a party has the opportunity to file exceptions is not a procedure affecting the rights of or available

to the general public: it concerns only the parties to that action.[5]

Relator relies on *Hanna Mining Co. v. Minnesota Pub. Utils. Comm'n,* 375 N.W.2d 550 (Minn.App.1985), *review denied* (Minn. Dec. 30, 1985), and *In re Implementation of Utility Energy Conservation Improvement Programs,* 368 N.W.2d 308 (Minn.App.1985), both holding that a commission erred in not properly promulgating rules. But these cases found error because the procedures involved "directly affect[ed] the rights or procedures available to the public." *Hanna Mining,* 375 N.W.2d at 553; *Utility Energy,* 368 N.W.2d at 314. Here, no right or procedure available to the public was involved. *See also In re Leisure Hills Health Care Center,* 518 N.W.2d 71, 74 (Minn.App.1994) (holding that promulgation of rules concerning rights or procedures not directly available to public is not required), *review denied* (Minn. Sept. 16, 1994).

The only harm relator claims to have suffered from the absence of rules was that it was free to make decisions as to the focus, form, and length of the exceptions it filed. The commissioner's final decision and order rejects relator's exceptions on substantive, not procedural, grounds. Relator's exceptions were not found unacceptable or deficient in focus, form, or length. The commissioner's failure to promulgate rules did not violate relator's right to due process.

### DECISION

Because extra charges of 12% paid by relator's customers were gratuities within the meaning of Minn.Stat. § 177.23, subd. 9, and Minn. R. 5200.0080, subp. 4a, relator violated Minn.Stat. § 177.24, subd. 2, by applying them to minimum wage payments and Minn. Stat. § 177.24, subd. 3, by retaining part of them. There is no statutory basis for distributing gratuities only to direct-service employees. Relator's settlement agreements with some employees did not abrogate its obligation to pay those employees the full amounts owed them by statute. Relator was not deprived of due process by the commis-

---

**5.** Relator alleges no violation of Minn.Stat.   § 14.57–62, governing contested case hearings.

sioner's failure to promulgate rules for filing exceptions to the ALJ's recommendations.

**Affirmed.**