## SIOMKIN et al. v. FAIRCHILD CAMERA & INSTRUMENT CORPORATION.

### No. 194, Docket 21250.

United States Court of Appeals
Second Circuit.

April 19, 1949.

SWAN, Circuit Judge, dissenting.

———◆———

Frank Scheiner and E. H. Bloch, both of New York City, for plaintiff-appellant.

Cravath, Swaine & Moore, of New York City (H. R. Medina, Jr., and John N. Calderwood, both of New York City, of counsel), for defendant-appellee.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff, who represents employees of the defendant, appeals from a judgment dismissing his complaint for failure to state a claim upon which relief can be granted, in an action to recover damages under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The only question is whether the employees were entitled to added overtime upon payments made to them during the years 1940–45, both inclusive, under an "Employee Participa-

tion Plan," which went into effect on January first, 1940, and a copy of which we annex in the margin.[1] The plaintiff asserts that this bonus should be treated as an addition only to the regular "rate", and that the employees were therefore entitled to an added fifty percent of that proportion of it which overtime bore to straight time and overtime combined. The defendant asserts that the bonus should be allocated propor-

---

[1] "'Employee Participation' Plan

"Effective as of January 1, 1940, the Company has decided to inaugurate a plan of 'Employee Participation,' to be based on the Net Earnings of the Company, after all taxes, for each calendar year beginning January 1, 1940.

"This 'Employee Participation' is not to be considered as a substitute for wages or salaries, but is to be paid in recognition of the value to the company of trained, steady, cooperative employees, and the added effective thought and effort they may put forth to bring additional profits to the Company.

"*Who Is a 'Participant'*

"Each employee, with the exception of the executive staff, automatically becomes a 'participant' when he has been employed during all or part of at least twenty-six separate weeks during the calendar year, provided he is still on the company payroll on April 30th, of the following year, and provided that no layoff between January 1st of the calendar year and April 30th of the following year has exceeded thirteen weeks continuous duration. Working time missed when a 'participant' is absent by written leave will not be deducted.

"*Who Is Not a 'Participant'*

"Employees leaving voluntarily or dismissed for any cause between January 1st of the calendar year and April 30th of the following year.

"*Method of Calculating the 'Employee Participation'*

"The payment is to be a percentage rate, to be determined by the Board of Directors, figured on one-half of the total wages or salary received during the last period of continuous employment within the five calendar years immediately preceding the date of payment of the 'Employee Participation.'

"For example, if an employee has been in the continuous employ of the Company for the calendar years 1936, 1937, 1938, 1939 and 1940, and his earnings during that period have totalled $8,000, and assuming the 'Employee Participation' rate were set at 3%, he would on May 1, 1941 receive a check for $120 representing a 3% return for one year on $4,000 being one-half of his total earnings for the five year period.

"As another example, if the same employee had been in the company only during the last three years, and his total earnings during that period amounted to $4,800 he would receive a check for 3% of $2,400 or $72.00.

"It is obvious that length of service up to five years will automatically increase the amount of 'Employee Participation' to be received by any individual.

"*Date of Payment*

"Payments will be made on May first of each year beginning with May 1, 1941 or as soon thereafter as the final figures are available. No earlier date can be safely set due to the necessity of awaiting the certified figures of the auditors covering the earnings of the previous calendar year.

"*General Method of Fixing the 'Employee Participation' Percentage*

"It is first assumed that the actual investor in the Company has the prior right to a reasonable return on his investment, and that such return should be on a basis of not less than 6%.

"It is further assumed that inasmuch as this 'Employee Participation' is not intended as a substitute for wages or salaries, which are to be paid for at prevailing rates, but as an extra inducement for improving the profit of the business, the amount to be distributed shall be a part of those earnings over and above the amount of the reasonable return referred to.

"After this reasonable return is paid, or set aside for stockholders, it is assumed that a portion of any earnings in excess of such reasonable return shall be considered as extra earnings due in part at least to savings, suggestions, improvements and extra thought and effort on the part of employees and that such employees should benefit in proportion to length and continuity of service.

"A careful study of past records indicates that after giving effect to the various changes occurring since the date of organization of the company in 1927, the actual cash investment of stockholders amounts to an average of approximately $14.00 per share on the present outstanding 337,032 shares, or $4,718,448.00.

"It is the present intention of the Directors to declare a rate of 'Employee Participation' which will represent an approximate percentage return in excess of

tionately to all the pay received—straight time and overtime—with the result that no added overtime is due.

On February 5, 1945, the Wages and Hours Administrator issued an "In-

terpretative Bulletin," of whose relevant part—"Category B"—we annex a copy.[2] Its meaning is not altogether clear, and it is in any event— as it itself declares—only a declaration of the Administrator's "en-

---

6% after taking into consideration any additional capital invested in the business either from new investments or from earnings reinvested for the period under review.

"For example, assuming that 1940 net earnings were found to equal 1939 earnings of $1.25 per outstanding share, or $442,744 and that no additional capital was invested during the year, the invested capital for 1940 would be considered as $14.00 per share or $4,718,448.00 and the net earnings of $442,744 would thereby represent 8.96% of same, or 2.96% above the 6% rate. Two and ninety-six hundreds percent would then undoubtedly be fixed by the Directors as the 'Employee Participation' rate.

"However, should it be necessary for any reason to invest $250,000 of additional capital in the business during 1940, the invested capital would be increased by this amount, making total invested capital $4,968,448. The percentage return on $422,744 of earnings would then be 8.51% and the 'Employee Participation' rate 2.51%. From year to year the added invested capital from earnings not declared in dividends but reinvested in the company will also be taken into consideration.

*"Cancellation or Modification*

"Inasmuch as this 'Employee Participation' is primarily based upon receiving and retaining the active cooperation of all employees, its continuation in future years is always dependent upon obtaining such cooperation which should result in a material and steady increase in earnings. It is further dependent upon any special action of Stockholders or Directors and for this reason, future payments beyond that which will be due as of May 1, 1941, cannot be considered a definite fixed policy and the Company reserves the right to cancel or modify the plan as conditions and contingencies may require.

"April 10, 1940."

2 "In bonus plans of the second category the employer promises, agrees or arranges to pay a bonus. The amount to be paid may be fixed or may be ascertainable by the application of a formula. An example of this type of plan is a production bonus based on the excess over a minimum quota which the individual, the group, or the plant, produces in a period of time.

"Closely akin is a bonus which is paid for performing work in less than an established standard time and also a bonus which is paid when certain types of merchandise are sold through an employee's efforts. Other kinds of bonuses falling within this group are bonuses distributed in a certain amount or on the basis of a fixed percentage of the profits of the employer or of his gross or net income. There are many variations and refinements of plans within this category. For example, the amount of the payment may vary according to the length of service of the employee; his production or compensation; the earnings, production or compensation of the group of employees with which he works; the sales or net or gross income of the employer; or it may be contingent upon his continuing in the employ of the employer until the time the payment is to be made.

"Bonus payments of this type will be considered a part of the regular rate at which an employee is employed, and must be included in computing his regular hourly rate of pay and overtime compensation.

"Many employers have been troubled by retroactive allocation of a 'bonus' where it was distributed less frequently than at the regular pay periods. This difficulty can easily be avoided. No additional overtime compensation need be computed by taking a predetermined percentage of the total earnings of the individual employees (both straight time and overtime), exclusive of the 'bonus.' Where the amount paid to each employee is actually based on a percentage of his total earnings, the 'bonus' itself includes the payment of both straight time and overtime.

"The degree of frequency with which a bonus is paid is a factor which the Divisions have always considered in determining whether it should be included in the 'regular' or 'basic' rates of pay for overtime purposes. As an enforcement policy to be followed in the absence of authoritative rulings by the courts, the Divisions will in the future not insist on the inclusion of any bonus (except where there is obvious evasion of the overtime requirements) which is paid at greater intervals than quarterly in computations of the 'regular' or 'basic' rate of pay for overtime purposes, even though the bonus would otherwise be of

forcement policy," which "does not and cannot affect the independent right of employees * * * to recover wages that are due them." As we read it, it means that unless a bonus is paid at intervals of three months or less, the Administrator will not add any overtime at all, and that even when it is paid at such intervals no overtime will be added, if the bonus is "based upon a percentage of his"—the employee's —"total earnings," because in such cases it includes the payment of both straight time and overtime. The Administrator has not the power to issue regulations in the ordinary sense, and his "Bulletins" have not the force of law, though they should be deemed to have the authority of an administrative interpretation.[3] As res nova, we do not agree that no overtime should be added to a regularly paid bonus which is paid at longer intervals than three months. That may be a desirable limit for the Administrator to impose upon himself in enforcement cases because of the accounting difficulties it avoids, but it is not a valid defence in actions by employees. On the other hand, we accept the Bulletin as an administrative interpretation—applying as well to bonuses payable at longer intervals than three months, as to those paid at other intervals—in so far as it declares that to a bonus "computed" or "based" upon a "percentage" of "total earnings" overtime need not be added. This we do because, quite aside from any interpretative authority of the "Bulletin," we should independently so interpret § 7(a) of the Act. A bonus which varies in proportion to "total earnings," varies in proportion to the sum of the straight time payments and the overtime payments, and a percentage of an aggregate is ordinarily computed upon every unit of the aggregate, unless some other purpose appears. It would be purely gratuitous to apply the percentage to "total earnings" over a period upon each dollar of straight time, but upon only sixty-seven cents of each dollar of overtime. Indeed, the plaintiff makes no such argument; his position is that the percentage must be applied to "total earnings" made in the year in which the bonus is computed and paid. In this we think that he is in part right and in part wrong; but before giving our reasons for this we must analyze in some detail how the "Plan" operates.

The bonus received in any year was made up as follows: The company subtracted from its earnings six percent of an amount which it estimated to be the capital contribution of its shareholders; and then found the percentage which the remainder of its earnings bore to the capital so estimated. This percentage was used as the multiplier of a multiplicand, made up of one-half the sum of the employee's total earnings over the last five years, including the year in question; and the product was the bonus. Obviously it was made up of five components, each computed by using the same multiplier upon one-half the employee's earnings in each of the past four years and in the current year. (For simplicity we disregard those cases in which an employee had served less than five years; and we assume that the "Plan" dates from its "effective" date, January 1, 1940, although it was only "announced" on April 10, 1940.) For reasons which will appear, it is somewhat easier to begin with the year, 1944. The "Plan" had been in existence five years on December 31st of that year, so that each of the five multiplicands used in computing the bonus for that year was one-half the "total earnings" of a year during which the "Plan" had been in effect. It is hardly necessary to say that, if to each of the five components of the bonus, computed on those multiplicands, no overtime should be added, none should be added to the whole bonus

---

a type requiring such inclusion. Such considerations as the recognized bookkeeping difficulty confronting employers in allocating a bonus paid less often than once each quarter to the hours in which the bonus was earned, the time-consuming burden placed upon the inspection staff when confronted with the task of making such allocations and the benefit to employees of having a current knowledge of the hourly rate upon which their overtime will be calculated motivate this administrative policy.

"This enforcement policy, of course, does not and cannot affect the independent right of employees under Section 16(b) of the Fair Labor Standards Act to bring their own suits to recover wages that are due them."

3 Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 580, note 17, 62 S.Ct. 1216, 86 L.Ed. 1682.

paid in that year. However, during each of the years 1940, 1941, 1942 and 1943 each employee knew that to his "total earnings" for that year would be added a bonus which he would receive in five installments—if he remained in service so long—one component paid in the year in which the earnings were made, and one paid in each of the succeeding four years. Had the five components been computed upon half the "total earnings" for 1940, and been paid in that year, the result would have been the product of a multiplicand of two and one-half times the "total earnings" for that year multiplied by the percentage fixed for that year. It is plain that at least to the first component—that paid in 1940—no overtime should be added. Had the payment of the other four components been merely deferred to four successive years—the percentage remaining the same—to each of them also no overtime would be added, for overtime does not depend upon the date at which a bonus is paid. Thus, the only question is whether there is a valid distinction between the component paid in 1940 and the four components paid in future years because the multipliers—"percentages"—used varied in every year. We think not. Whatever percentage was used to compute a component of a bonus based upon the "total earnings" of 1940, the product had for its multiplicand the same sum—one-half the amount of those earnings. There was no more reason to assume, when the component for 1940 of the bonus paid in 1944, for example, was computed by the use of the percentage fixed in 1944, that that percentage was not applied upon every dollar of the "total earnings" of 1940—straight time and overtime—than to assume that the percentage fixed in 1940 was not applied to every dollar of the same earnings to determine the component for 1940 of the bonus paid in 1940. In each case, unless some reason existed to the contrary, the percentage should be assumed to be applied ratably upon every dollar of the multiplicand. There was no reason to the contrary, and we hold that no overtime was payable upon the bonuses paid in 1944 and 1945, both of which were entirely made up of deferred payments of components computed upon "total earnings" made during years while the "Plan" was in operation. Obviously, the same result follows as to the component for 1940 of the bonus paid in 1940; as to the components for 1940 and 1941 of the bonus paid in 1941; as to the components for 1940, 1941 and 1942 of the bonus paid in 1942; and as to the components for 1940, 1941, 1942 and 1943 of the bonus paid in 1943.

There remain those components of the bonuses paid in 1940, 1941, 1942 and 1943 which were computed upon years before 1940, during which the "Plan" was not in operation. It is indeed true that the component for even these years was computed upon the "total earnings" of the employee in that year. Had the "Plan" been in operation before the Act took effect on October 24th, 1938, there would have been good reason for saying that, since the bonus was computed upon the "total earnings" for the year 1937, for example, no overtime ought to be added, although it was paid in 1940. However, the "Plan" went into operation only in 1940; and there is a valid distinction between a percentage applied to "earnings" in a past year, and that applied to those which are in process of being made. Both are, it is true an "incentive" to the employee, as is any bonus; but the first is an "incentive" which does not depend upon the extent that the employee exerts himself; he gets it, regardless of the amount of his earnings during the period for which it is paid, just as he gets a bonus paid as a lump sum, or one computed upon the employer's capital, or even upon his profits. When a percentage is applied to an employee's current earnings, it would, as we have said, normally be treated as an increase in each unit of pay—straight time and overtime—just as any percentage is ordinarily reckoned; and it may be asked why a percentage taken on past earnings—overtime plus straight time—should not also be so taken. As mere matter of mathematics that may be true; but there is a reason here for distinguishing. A percentage paid upon current earnings is an "incentive," or inducement proportional to the amount of the employee's endeavors; it operates like his pay, which also varies with those endeavors, whether the unit be

fixed by the hour, or by the piece. In substance, it has the same effect, as between employee and employer, as though it was added to each unit of pay, the unit and a half earned for overtime as well as the unit earned for straight time; and it ought to be deemed the equivalent of an increment to each of the units for current work. Obviously that is wholly untrue, when it is applied to past earnings.

■ There is, moreover, an added reason for the same result. The purpose of the Act is to put a premium upon shorter hours by making overtime more expensive than straight time to employers. When the amount of a bonus does not depend upon the hours of work performed in the period for which the bonus is paid, it does not serve to deter overtime, unless some payment is added for overtime; but, when the amount varies with the proportion of the amount paid for overtime, it carries its own deterrent, and to add to it an overtime factor would be to impose overtime upon overtime.

■ We hold therefore that the judgment was erroneous in dismissing the complaint, and that upon the face of the allegations overtime was payable upon all the components of the bonuses paid in 1940, 1941, 1942 and 1943, which were computed upon the "total earnings" of employees made before 1940. We do not, of course, undertake to say that the defendant has no defenses to these components, for no answer has been filed. We do hold that as to those components of any of the bonuses which were computed upon "total earnings" made after December 31, 1939, no overtime was due. As we have already said, we have assumed for simplicity that the line of cleavage should be January 1, 1940, and not April 10, 1940; we do not mean to foreclose the plaintiff as to that, if he wishes to establish April 10, 1940, as the right line.

Judgment reversed; cause remanded for further proceedings not inconsistent with the foregoing.

SWAN, Circuit Judge (dissenting).

Section 7 of the Fair Labor Standards Act requires an employer to compensate overtime work at 50% more than the regular rate of pay. The Act itself is silent as to bonus payments. The only significance under the Act of a bonus arrangement is its bearing upon the regular rate in fact payable to an employee during the work week in which he performs his services. Where the bonus is based upon a percentage of the total compensation for both straight time and overtime received for a given work week, the bonus does not involve any violation of § 7 as the opinion of the Chief Judge clearly demonstrates with respect to employees whose employment by the defendant did not antedate 1940. I am unable to follow the distinction made with respect to employees whose employment does antedate that year. The plan as I interpret it, is retroactive as to them and provides a bonus for services performed in such earlier year, e. g. 1939, based upon a percentage of the employee's total earnings in that year, provided he continues to work for the defendant throughout 1940. In so far as the bonus is based on his earnings in 1939, it is a pure gratuity since he had no expectation of receiving it when he performed those services. That part of the bonus cannot reasonably be considered as an incentive payment for 1940 services because, regardless of his 1940 earnings, the component based on 1939 earnings will remain unchanged. To hold that such component must be deemed to increase the employee's regular rate of pay for straight time services in 1940 produces, in my opinion, an unjust result not required by any previous decision under the Act. I would affirm the judgment of dismissal.