[No. 271-3.    Division Three.    June 10, 1971.]

RAY WAECHTER et al., *Respondents*, v. CARNATION CO., *et al.,*
*Appellants.*

*H. W. Felstad* (of *Olson & Olson*), for appellants.

*Richard H. Bennett,* for respondents.

GREEN, J.—Plaintiffs, Ray Waechter, Roger Freeland and Cecil Henderson, d/b/a Superior Dairy, commenced a defamation action against defendants, Carnation Co., Wayne Harris, Gary Allen, Clifford Lucas, and their re-

spective wives. Defendants Harris and Lucas were dismissed from the case. A jury awarded plaintiffs $25,000. Defendants appeal.

Carnation Co. operates a retail residential route, delivering dairy products to about 1,900 residents of the Tri-Cities. Allen is a driver-salesman for Carnation. Plaintiffs Waechter and Freeland were employed by Carnation as driver route-salesmen until about 1965. At that time these plaintiffs left Carnation. They formed a partnership with plaintiff Henderson called "Superior Dairy" and entered into competition with Carnation in the retail route delivery of dairy products. Plaintiffs purchase their milk and other dairy products from a source in Walla Walla from where it is transported five times a week to a refrigerated storage truck in Richland. The milk is kept in the storage truck at 40 degrees Fahrenheit. Delivery to customers is made by each of plaintiffs in insulated but not refrigerated delivery trucks. The jury could have found that by the end of September 1969, plaintiffs had about 1,650 customers—50 less than at the end of September 1968.

It is customary for the driver route-salesman to solicit residents who may be customers of a competitor in an effort to increase their number of route patrons. This was a practice engaged in by both plaintiffs and defendants. Defendant Allen testified he made 10 to 15 solicitations a day using a standard sales presentation. It is because of the alleged words and representations of defendants in the solicitation of new business that this action arises. Plaintiffs' complaint alleged that in an effort to injure them in their personal and business reputation, defendants made the following representations:

> You use Superior Dairy milk?!! They have no refrigerator in their trucks. They give you warm milk. Haven't you noticed your milk going rotten?! A lot of people have been picking up and noticing their milk has been going rotten! There is no refrigerator in the Superior Dairy trucks, hence they are delivering rotten milk—it sours.
>
> Milk from the Superior Dairy is not delivered until

[after] 12 o'clock midnight. So it is put on the porch all night long and since there is no refrigerator in the truck, this causes more bacteria in the milk. You know if it has too much bacteria it will make your baby sick. When you bring the Superior milk in, it's warm, and full of bacteria. Carnation trucks are refrigerated.

Plaintiffs' witnesses testified that representations substantially as alleged in the complaint were made by defendants. Additionally, after allowance of a trial amendment to the complaint, one witness testified:

He [Gary Allen] said that there had been people that had quit Superior Milk Company because they felt they were being cheated, . . .

He just asked me if I was very happy with the way that Superior Dairy billed their customers, what I thought of their statement, and I said, well, my husband didn't care for their statement, and he said, there are a lot of other people in the area that feel that they are being cheated.

This was the only witness to testify to this representation. She never revealed the statement to anyone until she got on the witness stand. While delivery was discontinued for a few days, she resumed and continued taking milk and other dairy products from plaintiffs.

Defendants denied the allegations of the complaint and pleaded truth as a defense. The evidence is in conflict on all points. Defendants produced some testimony that because of the early delivery and lack of refrigeration in the delivery trucks, plaintiffs' customers received warm and spoiled milk when they took it from their porches; that the refrigerated storage truck was not shaded and by reason thereof they questioned the maintenance of a temperature of 40 degrees Fahrenheit; and while they raised questions about the bacteria count in plaintiffs' milk, there was evidence the milk met the standards of the state health department. Defendant Allen denied he ever accused plaintiffs of cheating or made the statements attributed to him about the milk.

First, defendants contend the trial court erred in allowing over objection testimony that "people quit Supe-

rior because they were being cheated" and the granting of a subsequent motion to permit the pleadings to be amended to conform to the evidence. Trial of this case began in December 1969, but was interrupted by the declaration of a mistrial for reasons not reflected in the present record. During that trial, one of plaintiffs' witnesses for the first time testified concerning the representation as to cheating. In the retrial that began in March 1970, the same witness testified as to the cheating statement. Defendants objected on the ground the complaint did not allege the cheating statement. The objection was overruled. At the conclusion of plaintiffs' case, the court allowed the pleadings to be amended to conform to the evidence. Defendants did not claim surprise nor move for a continuance for the purpose of meeting this issue. We do not believe the trial court erred in overruling the objection and allowing the testimony. Defendants were aware of the existence of the testimony and the likelihood of its use. The overruling of defendants' objection is akin to the allowance of a trial amendment and lies within the sound discretion of the trial court. CR 15(b). Defendants could have been amply protected by a motion for continuance. We find no abuse of discretion in the circumstances of this case.

Several errors urged by defendants may best be considered in light of the conflicting theories presented to the trial court. Defendants throughout the trial took the position that all of the statements alleged to have been made concerning the milk impugned *only* the quality of plaintiffs' product and therefore were not actionable without pleading and proof of special damages. (Citing 3 Restatement of Torts at 323 (1938); *Wilson v. Sun Publishing Co.*, 85 Wash. 503, 148 P. 774 (1915); and 57 A.L.R.2d 837 (1958).) Further, it was urged that where only the quality of the product is impugned, the burden is upon the plaintiff to prove the falsity of the statements. 3 Restatement of Torts at 322, 354, 374, 376 (1938). With respect to the statement as to cheating, defendants argued the issue should not be injected into the case, but if it was, plaintiffs'

proof revealed no repetition of this statement to anyone except in open court and this witness was not affected by it since she was a customer at time of trial; therefore, damages were de minimus and the issue should not have been presented to the jury.

On the other hand, plaintiffs contended throughout the trial the statements concerning the milk and cheating were actionable per se since they were in derogation of plaintiffs' services to customers, defamed their business reputation and related directly to their business practices; therefore, they were entitled to recover a substantial award without proof of special damage.

In the background of these conflicting positions, the trial court gave the following instructions to which defendants assign error:

Instruction No. 7:

You are instructed that defamatory words spoken of a person or a corporation, which, in themselves, prejudice him in his profession, trade, vocation or office are slanderous and actionable in themselves unless they are either true or privileged.

Instruction No. 8:

You are instructed that defamatory words are presumed to be false until proven to be true. The burden of such proof rests with the defendant.

Instruction No. 11:

You are instructed that you need not find that the defendants acted maliciously; that malice is immaterial in a civil action for libel when the publication injures any person or corporation in his or its business.

Instruction No. 13:

If you find that statements were made which only disparaged or impugned the quality of the plaintiffs' merchandise, then the plaintiffs cannot recover for these statements unless they prove special damages such as loss of profits. In this case special damage has not been proven. I have determined as a matter of law that the words alleged in plaintiffs' complaint regarding customers having quit Superior because they were being cheated constitute slander per se. This means that if you

find that said words were in fact spoken by the defendant Carnation Company, acting by and through the defendant Gary Allen, of and concerning the plaintiffs, to some third person, and that they were untrue, then plaintiffs are not required to prove special damages with respect to such words, and may recover such damages as you, in your sound discretion, deem just and reasonable.

Instruction No. 15:

You are instructed that if you find in favor of the plaintiffs, you are to assess the amount of damages that the plaintiffs have incurred as a result of the conduct of the defendants. With regard to the amount of such damages, the plaintiffs have the burden of proving by the fair preponderance of the evidence that they have been damaged. However, the plaintiffs need not prove his [sic] exact amount of damages in order to recover substantial damages from the defendants by reason of their conduct. The case, by its nature, may be difficult for the plaintiffs to prove with exactitude. The defendants cannot escape liability and damages to the plaintiffs simply by reason of such difficulty in the ascertainment of the amount of the damages. In the event you find in favor of the plaintiffs, it will be your duty to assess such amount as damages as in your judgment is proper under the evidence presented.

■ It is the rule that where a statement *only* disparages the quality of plaintiff's goods, the statement is actionable if special damages are pleaded and proved. Restatement of Torts § 624, at 325 (1938) *et seq.*; 57 A.L.R.2d 839 (1958); 50 Am. Jur. 2d *Libel and Slander* § 542, at 1061 (1970). On the other hand, it is the rule that defamatory words spoken of a person, which in themselves prejudice him in his profession, trade, vocation, or office, are slanderous and actionable per se unless they are either true or privileged. *Spangler v. Glover,* 50 Wn.2d 473, 478, 313 P.2d 354 (1957); 50 Am. Jur. 2d *Libel and Slander* § 102, at 602 (1970); Restatement of Torts §§ 570, 573 (1938). A statement may be published in circumstances that violate both of the just cited rules, *i.e.,* it may disparage the quality of the product and at the same time imply the owner or vendor is dishonest, fraudulent, or incompetent, thus affect-

ing the owner or vendor's business reputation. In such circumstances, an action may be brought for defamation as well as for disparagement. Restatement of Torts § 573, at 182 (1938); 57 A.L.R.2d 839 (1958). The circumstances under which only disparagement is involved and the circumstances under which disparagement and a defamation of the plaintiff's business reputation has occurred has been the subject of litigation, *Olympia Water Works v. Mottman,* 88 Wash. 694, 696, 153 P. 1074 (1915); *Wilson v. Sun Publishing Co., supra;* 57 A.L.R.2d 839 (1958), text and law review discussion. W. Prosser, Torts § 122, at 940-41 (3d ed. 1964); Harry Hibschman, *Defamation or Disparagement,* 24 Minn. L. Rev. 625 (1940).

Under the instructions given by the court, if the jury found the statements impugned *only* the quality of the milk, plaintiffs could not recover because special damages had not been proved; however, if the jury found the statements injured plaintiffs' reputation in their trade or business, then under instructions No. 7, 8 and 11 plaintiffs were entitled to recover. We find no error in the giving of these instructions. They are accurate statements of the law. *Spangler v. Glover, supra; Ecuyer v. New York Life Ins. Co.,* 101 Wash. 247, 172 P. 359 (1918). There was substantial evidence to support a jury's finding that the statements made concerning milk not only disparaged the quality of the milk, but also prejudiced the plaintiffs in their trade or business; it is clear this was the intended effect of such statements.

■ Defendants urge error in the giving of instruction No. 8, contending that in a disparagement case the burden of proving the statements false is upon the plaintiff. This contention would be correct if this were only a disparagement case. However, instruction No. 13 ruled out disparagement of product, leaving only the question of whether the statements concerning the milk injured plaintiffs' reputation in their trade or business, in which event the words were actionable per se. In this situation the defamatory words are presumed false until their truth is proved by the

128

defendants. *Spangler v. Glover, supra; Ecuyer v. New York Life Ins. Co., supra.*

■ Next, defendants assign error to the jury award of $25,000 as being excessive and the result of passion and prejudice. This position is based upon the assumption the statements concerning the milk were not libelous per se and since no special damage was proved in support of an action for disparagement these statements were out of the case, leaving only the statement concerning cheating. It is then argued that because the statement as to cheating was made to only one person who never repeated the statement until she was in court and at that time was continuing her patronage of the plaintiffs, the statement would support a verdict of nominal damages but not a verdict of $25,000. From our review of the record it seems evident the jury's award included damages not only for the statement as to cheating, but also for the statements made with respect to the delivery of milk. In view of our holding that the statements concerning milk were properly submitted to the jury under the instructions given and were actionable per se without proof of special damage, we find there is no evidence indicating the verdict was the result of passion or prejudice. Likewise, we are not shocked by the amount of the verdict and therefore it must stand. *Johnson v. Marshall Field & Co.,* 78 Wn.2d 609, 617, 478 P.2d 735 (1970).

■ Error is assigned to that portion of instruction No. 13 that relates to damages and also to instruction No. 15 upon the ground that the instructions fail to set forth adequate standards for determining damages. It is the rule that where the defamation is actionable per se and neither truth nor privilege is established as a defense, the defamed person is entitled to substantial damages without proving actual damages. *Michielli v. U. S. Mortgage Co.,* 58 Wn.2d 221, 361 P.2d 758 (1961); *Arnold v. National Union of Marine Cooks & Stewards,* 44 Wn.2d 183, 265 P.2d 1051

(1954).[1] We find no error in the giving of these two instructions.

In view of our previous comments, it is unnecessary to discuss the other assignments of error raised by defendants.

Judgment affirmed.

MUNSON, C.J., and EVANS, J., concur.

---

[1]The early cases of *Olympia Water Works v. Mottman,* 88 Wash. 694, 153 P. 1074 (1915), and *Wilson v. Sun Publishing Co.,* 85 Wash. 503, 148 P. 774 (1915), are at variance with the trend of decisions represented by the cited cases to award substantial damages where the words used are actionable per se.