[No. 19970-6-I.   Division One.   August 1, 1988.]

JOHN B. WINANS, ET AL, *Respondents,* v. W.A.S., INC., ET AL, *Appellants.*

*Richard C. Yarmuth* and *Culp, Dwyer, Guterson & Grader,* for appellants.

*Scott B. Henrie, Elizabeth Christianson,* and *Williams, Kastner & Gibbs,* for respondents.

WINSOR, J.—W.A.S., Inc., d/b/a Henry's Off Broadway (Henry's), appeals from a judgment in which the court found that Henry's compensation method for its automobile parking valets violated the Fair Labor Standards Act. Henry's also appeals the award of attorneys' fees and costs. Winans and five other valets (hereafter valets) cross–appeal the denial of liquidated damages.

Henry's employed a number of valets in its restaurant business. Its employment contract with the valets included an agreement that designated all tips collected by valets as the property of Henry's. Henry's paid the valets an hourly wage of between $4.50 and $6, plus a bonus. The bonus (but not the wage) was based on the amount of tips collected.

The valets challenged the legitimacy of the agreement, claiming that it was illegal under the Fair Labor Standards Act of 1938 (FLSA) as amended, 29 U.S.C. § 201 *et seq.*

(1986). They sought unpaid minimum wages, liquidated damages, attorneys' fees and costs.

Prior to the commencement of the trial, the court ruled as a matter of law that the agreement was illegal and unenforceable. A trial was then held on the statutory defense of whether Henry's had acted in good faith and with a reasonable belief that it was not violating the FLSA in entering into the agreement. See 29 U.S.C. § 260. The court found in Henry's favor and therefore denied the valets' claim for liquidated damages.

At a posttrial motion the court awarded prejudgment interest, attorneys' fees, and costs.

Henry's appeals from the judgment, assigning error to the court's conclusion that the agreement was illegal, and to the award of costs and the amount of attorneys' fees. The valets cross–appeal the denial of liquidated damages and request attorneys' fees on appeal.

The first issue we address is whether the regulations authorizing agreements in which tips become property of the employer have been nullified by the 1974 amendment to section 3(m) of the FLSA.

Section 3(m) of the FLSA (29 U.S.C. § 203(m)), as amended in 1974, outlines a tip credit which employers may use against their obligation to pay minimum wages to their tipped employees. Section 3(m) provides that all tips must be retained by the employee and allows the employer to take up to a 40 percent credit against its minimum wage obligation on account of the tips.[1]

---

[1]29 U.S.C. § 203(m) as amended reads in pertinent part: "In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 40 per centum of the applicable minimum wage rate, except that the amount of the increase on account of tips determined by the employer may not exceed the value of tips actually received by the employee. The previous sentence shall not apply with respect to any tipped employee unless (1) such employee has been informed by the employer of the provisions of this subsection, and (2) all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to

The Code of Federal Regulations reiterates the tip credit. 29 C.F.R. § 531.59. The regulations also sanction employment agreements in which all tips become the property of the employer. 29 C.F.R. §§ 531.52, .55(a).

Immediately after the 1974 amendment the Wage and Hour Division of the Department of Labor, which promulgated the regulations and is charged with enforcement of the FLSA, issued several opinion letters asserting that the 1974 amendment superseded segments of the regulations and rendered illegal any agreement that required an employee to turn over tips to the employer. Wage and Hour Op. Letter WH–310 (Feb. 18, 1975); Wage and Hour Op. Letter WH–321 (Apr. 30, 1975); see also WH Publication 1433 (Jan. 1978). The letters also stated that the Department was in the process of revising its regulations to conform to the amendment. The regulations were never revised and are printed in the current Code of Federal Regulations.

Henry's argues that the 1974 amendment to section 3(m) of the FLSA concerned the tip credit but not tip agreements. According to Henry's, the amendment affected only "tipped employees," as defined in section 3(t) but limited by 29 C.F.R. § 531.55(a), which distinguishes tipped employees from employees who by prior agreement turn over their tips to the employer. Henry's maintains that section 3(m) does not apply to employees whose tips are subject to such agreements and that its agreement is permitted under the regulations. Henry's admits, however, that if the

prohibit the pooling of tips among employees who customarily and regularly receive tips."

Prior to 1974 the section read in pertinent part: "In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 50 per centum of the applicable minimum wage rate, except that in the case of an employee who (either himself or acting through his representative) shows to the satisfaction of the Secretary that the actual amount of tips received by him was less than the amount determined by the employer as the amount by which the wage paid him was deemed to be increased under this sentence, the amount paid such employee by his employer shall be deemed to have been increased by such lesser amount."

regulations are found to be invalid, then its wage method would be illegal.

The valets assert that the regulations are "mere interpretations" and are based on a statutory provision no longer in existence. They place great weight on the Department of Labor opinion letters that interpret the 1974 amendment as invalidating the regulations.

■ The regulations at issue, 29 C.F.R. §§ 531.52 and .55(a), are current regulations. They were properly promulgated by the Department of Labor in 1967 pursuant to the requirements of the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.* (1986), and as such are accorded the force of law, *Chrysler Corp. v. Brown,* 441 U.S. 281, 295, 60 L. Ed. 2d 208, 99 S. Ct. 1705 (1979). However, a regulation is a nullity where it is inconsistent with a statute. *E.g., Manhattan Gen. Equip. Co. v. Commissioner,* 297 U.S. 129, 134, 80 L. Ed. 528, 56 S. Ct. 397 (1936); *Pacific Gas & Elec. Co. v. United States,* 664 F.2d 1133 (9th Cir. 1981).

■ We hold that the regulations permitting tip agreements are nullities because they are inconsistent with section 3(m) of the FLSA, as amended. We recognize the section as amended is not clear as to whether tip agreements are permitted. It specifies the maximum credit from an employee's tips an employer may take against its obligation to pay minimum wages to the "tipped employee." Section 3(m) also provides that a tip credit may not be taken against the obligation to pay minimum wages "to any *tipped employee* unless . . . all tips received by such employee have been retained by the employee". (Italics ours.) The amendment did not affect section 3(t) of the act, which defines "tipped employee" as any employee engaged in an occupation in which he or she customarily and regularly receives more than $30 a month in tips. However, a regulation, 29 C.F.R. § 531.52, narrows the definition of tipped employees to exclude employees who turn over all their tips to their employer by prior agreement. This regulation states in part:

In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer. Only tips actually received by an employee as money belonging to him which he may use as he chooses free of any control by the employer, may be counted in determining whether he is a "tipped employee" within the meaning of the Act and in applying the provisions of section 3(m) which govern wage credits for tips.

*See also* 29 C.F.R. § 531.55(a).[2] This court must determine whether the trial court correctly held that Congress intended that the amended section 3(m) would cover all employees to whom tips are paid, effectively nullifying regulations §§ 531.52 and .55(a) and tip agreements.

Few cases have addressed whether the 1974 amendment prohibited agreements in which tips are turned over to the employer, or have defined the term, "tipped employee." The court in *Usery v. Emersons, Ltd.*, 22 Wage & Hour Cas. (BNA) 1437, 80 Lab. Cas. (CCH) ¶ 33,478 (E.D. Va. 1976) considered the validity of an employer's "tip back" compensation plan, under which the parties agreed that all tips were the property of the employer. The employees passed their tips to the employer who, in addition to paying minimum wages to its employees, deducted the minimum wage from the tips and returned the excess. Emersons, the employer, maintained that this compensation plan was permitted under 29 C.F.R. §§ 531.52 and .55. Usery, an employee, argued that the 1974 amendment to section 3(m) outlawed such a plan.

The court held that the 1974 amendment rendered the tip back compensation plan a violation of section 3(m) to

---

[2] 29 C.F.R. § 531.55(a), titled "Examples of amounts not received as tips", provides in part: "[W]here the employment agreement is such that amounts presented by customers as tips belong to the employer and must be credited or turned over to him, the employee is in effect collecting for his employer additional income from the operations of the latter's establishment. . . . [P]lainly the employee is not receiving tips within the meaning of section 3(m) and 3(t). The amounts received from customers are the employer's property, not his, and do not constitute tip income to the employee."

the extent that the plan allowed Emersons to meet its minimum wage obligation from employees' tips. Portions of the court's analysis are troubling. The court acknowledged that section 3(m) as amended is unclear as to whether the compensation plan is permitted. The court appropriately considered the legislative history of the 1974 amendment.[3] The quoted history concerned the "tips" of a "tipped employee." The court, however, failed to provide a definition of these terms. The opinion used these terms without acknowledging that, if the regulations apply to distinguish tips retained by the employee from tips passed by agreement to the employer, the quoted legislative history does not indicate congressional intent to nullify the regulations or to prohibit tip agreements like those used by Emersons and Henry's. The court found the agreement and the tip back plan illegal. Its rationale was that 1974 amendment would be turned "on its head" if the regulations were still valid.

*Richard v. Marriott Corp.,* 549 F.2d 303 (4th Cir.), *cert. denied,* 433 U.S. 915, 53 L. Ed. 2d 1100, 97 S. Ct. 2988 (1977), held that a compensation plan whereby the employer paid its employees only the amount of the deficiency when the employees' tips fell short of the minimum wage was illegal. The court ruled without discussion or citation to authority that an opinion letter issued by the Wage and Hour Administrator that purported to repudiate the regulations in fact had that effect.[4] 549 F.2d at 304–05.

---

[3]The court looked to a 1974 Senate Committee report, but also mistakenly quoted from a 1966 House report on the original legislation. 22 Wage & Hour Cas. (BNA) at 1440.

[4]This court does not accept the contention of the *Richard* court and the respondent that an administrative opinion letter can have the effect of repudiating valid regulations promulgated under the APA. *Accord, Batterton v. Marshall,* 648 F.2d 694, 701–02 (D.C. Cir. 1980); *Siomkin v. Fairchild Camera & Instrument Corp.,* 174 F.2d 289, 291–92 (2d Cir. 1949) (interpretive bulletins from the Wage and Hour Administrator are not regulations and do not have the force of law); *see generally GE Co. v. Gilbert,* 429 U.S. 125, 140–42, 50 L. Ed. 2d 343, 97 S. Ct. 401, 410–11 (1976) (discussion on weight to be accorded administrative guidelines, interpretations and opinions).

Several recent cases presumed the continuing validity of the regulations. In *Mechmet v. Four Seasons Hotels, Ltd.,* 639 F. Supp. 330 (N.D. Ill. 1986), *aff'd,* 825 F.2d 1173 (7th Cir. 1987), the court relied on 29 C.F.R. § 531.52 to distinguish a tip from a service charge. The court in *Lakeview Inn & Country Club, Inc. v. Rose,* 338 S.E.2d 166 (W. Va. 1985), addressed whether gratuities from a banquet are taxable as gross income. The opinion quoted in full 29 C.F.R. § § 531.52–.53 to define tips.

The uncertainty with respect to the validity of the regulations is reflected in the secondary sources on the subject. The 1986 Prentice–Hall, Inc. Payroll Guide Service states that tips subject to tip agreements are not tips under sections 3(m) and (t), and cites 29 C.F.R. § 531.55. Section 3105.7 at 3038 (Jan. 30, 1987). Another source notes that such agreements are invalid and cautions that the regulations were superseded by the 1974 amendments to the FLSA. 5 Empl. Coordinator (Research Inst. Am.), at 54,068.

Neither the language of section 3(m) as amended nor case law clearly nullifies the regulations or invalidates tip agreements. In light of the confusion reigning over the legality of tip agreements and the validity of the regulations we will look to the legislative history of the 1974 amendment for clarification.

There is no indication that Congress in amending section 3(m) adopted the narrow interpretation of tips put forth in the regulations. The Senate report on the FLSA amendment of 1974 from the Committee on Labor and Public Welfare discussed the purpose and intended effects of the modification of section 3(m).[5] Section 3(m) was modified in part "by requiring that all tips received be paid out to tipped employees." S. Rep. No. 690, 93d Cong., 2d Sess. 42

---

[5]The intent of the Legislature as revealed by a committee report is highly persuasive. *E.g., Mills v. United States,* 713 F.2d 1249, 1252 (7th Cir. 1983), *cert. denied,* 464 U.S. 1069, 79 L. Ed. 2d 212, 104 S. Ct. 974 (1984); 2A C. Sands, *Statutory Construction* § 48.06 (4th ed. 1973).

(1974) (hereinafter cited as S. Report). The only definition of tipped employee in the report is the section 3(t) definition. The Senate report relies on part of 29 C.F.R. § 531.52 to define tips:

A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity.

S. Report, at 42.

Key to this definition is the implication of the last sentence—that the giving of a tip is a matter "determined solely by the customer". It is the intent of the customer that governs whether a tip is created. The quoted definition does not provide that where a customer intends to give a tip to an employee, the tip can be converted to something other than a tip by an agreement that is unknown to the customer.[6]

Moreover, the report's definition of tips does not include the rest of section 531.52, beginning with the sentence: "In the absence of an agreement to the contrary between the recipient and a third party, the tip becomes the property of the [recipient]". This omission suggests that the Senate committee rejected the narrower interpretation of tips in the regulations that excludes tips subject to tip agreements.

The report states that the 1974 modification "specifically requires that . . . all tips received by [an] employee must be retained by the employee." S. Report, at 43. In light of

---

[6]The use of the word "generally" preceding the phrase, "[the customer] has the right to determine who shall be the recipient of [the] gratuity", does not change this analysis. A customer does not always control which employees will be the ultimate recipient of his or her tip, such as in the situation where the waiters of an establishment pool their tips or share them with buspersons or other employees attending the customer. Section 3(m) was not meant to discourage the practice of pooling, splitting or sharing tips with employees who customarily and regularly receive tips. S. Report, at 43; *see also* 29 U.S.C. § 203(m)(2).

the broad definition of tips apparently adopted in the committee report, we read this sentence to mean exactly what it says, that is, the committee intended for *all* tips to be retained by the employee, regardless of any tip agreement to the contrary.[7] Furthermore, as noted in *Usery v. Emersons, Ltd., supra,* if employers may opt out of section 3(m) by means of an agreement rendering tips the property of the employer, the 1974 amendment accomplished nothing. Under such an agreement an employer, by paying wages out of tips turned over or credited to the employer, could receive more than the maximum 40 percent credit against his or her minimum wage obligation authorized by section 3(m).

We hold that an intent of Congress in amending section 3(m) in 1974 was to include as tips any gratuity given to an employee that the customer presumably intended as a tip, regardless of any contrary tip agreement between the employee and the employer. Consequently, all tips must be retained by the employee, and tip agreements transferring tips to the employer are invalid and contrary to law.[8] Section 3(t), defining "tipped employees," covers all employees who receive more than $30 in tips each month, and the contrary provisions of 29 C.F.R. §§ 531.52 and .55(a) are without legal effect. As a result, the tip agreement used by Henry's in this case is void and unenforceable.

### LIQUIDATED DAMAGES

Section 16(b) of the FLSA provides that in an action to recover unpaid minimum wages, liquidated damages equal to the amount of unpaid wages may also be awarded. 29

---

[7]This mandate applies only where the employer enjoys a tip credit. *See* section 3(m). In the unusual and hypothetical case where an employer retains all tips but pays back in wages at least the full amount of the tips plus the minimum wage, there is no tip credit and the tip agreement is legal.

Moreover, the requirement that employees retain all tips does not restrict agreements between employees. See footnote 6.

[8]See footnote 7.

U.S.C. § 216(b). However, section 11 of the Portal–to–Portal Act provides that if, in such an action, the employer establishes that the conduct giving rise to the action was in good faith and that he or she had reasonable grounds for believing the act was not a violation of the FLSA, the court may, in its discretion, deny liquidated damages. 29 U.S.C. § 260.

Paragraph 10 of the valets' complaint requested liquidated damages as well as unpaid minimum wages. Henry's answer simply denied the allegations of the paragraph. The answer did not assert the good faith and reasonable belief affirmative defense. Five weeks prior to trial, with new counsel, Henry's moved to amend its complaint to add the defense. The valets opposed the motion. The valets assert that the motion was denied although there is no evidence of a denial in the record, and the order, if made, was never signed.

On the first trial day, after hearing pretrial arguments, the court concluded that the agreement was illegal as a matter of law but ruled that the good faith defense was implicit in Henry's denial of the allegations contained in paragraph 10. It ordered a trial solely on the issue of Henry's good faith and reasonable belief. The court found that Henry's implementation of the plan and tip agreement was in good faith and based on reasonable reliance on the regulations. The court denied the valets liquidated damages.

The valets cross–appealed, contending that the trial court erred in allowing Henry's to present evidence of good faith and reasonable grounds. They maintain that the defense is an affirmative defense that Henry's waived under CR 8 by failing to plead it in its answer.

Henry's responds that the defense was implicit in its denial of the allegations of paragraph 10 of the complaint, that it was within the court's discretion to determine whether the defense needed to be affirmatively pleaded, and that the valets offered no evidence of abuse of discretion.

■■■ Accepting arguendo the valets' contentions that the good faith defense was not implicit in Henry's denial, and that good faith and reasonable belief is an affirmative defense that Henry's was required to plead, the valets have still failed to show that the court erred in admitting evidence of good faith and in denying liquidated damages.

A trial court can be affirmed on any grounds established by the pleadings and supported by the proof. *Wendle v. Farrow,* 102 Wn.2d 380, 686 P.2d 480 (1984). CR 15(b) provides in part:

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him . . . The court may grant a continuance to enable the objecting party to meet such evidence.

The party opposing the amendment of the pleadings can be amply protected by a motion for continuance. *Waechter v. Carnation Co.,* 5 Wn. App. 121, 485 P.2d 1000 (1971). If the record does not indicate that the opposing party requested a continuance, the party may not appeal the amendment. *Daves v. Nastos,* 105 Wn.2d 24, 27, 711 P.2d 314 (1985).

The valets have failed to show that the court abused its discretion in allowing evidence on the good faith defense. There is no evidence that they requested a continuance, or that a substantial right was prejudiced by admission of the evidence.

## ATTORNEYS' FEES

Finally, Henry's contends that the trial court erred by awarding costs and excessive attorneys' fees because the valets were unsuccessful in litigating a "substantial portion" of their claim and the fees were disproportionate to the damages awarded by the court. Henry's maintains that the valets' unsuccessful claim for liquidated damages under

section 16(b) was a substantial part of their action. The trial court also erred in awarding costs, Henry's asserts, because the valets did not submit legal support for their right to reimbursement.

The award of attorneys' fees is within the sound discretion of the trial court and will not be reversed on appeal unless it is untenable or manifestly unreasonable. *Valley v. Selfridge,* 30 Wn. App. 908, 918, 639 P.2d 225 (1982). In determining attorneys' fees the court should not award fees incurred in pursuing an unsuccessful claim, *Bowers v. Transamerica Title Ins. Co.,* 100 Wn.2d 581, 675 P.2d 193 (1983), that is, "a claim that is distinct in all respects from [the] successful claims". *Hensley v. Eckerhart,* 461 U.S. 424, 440, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983) (request for attorneys' fees under Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988). But where an action consists of related claims a plaintiff who has won substantial relief should not have his or her award of attorneys' fees reduced simply because the court did not adopt each claim raised. *Hensley,* at 440. There is no certain method of determining when claims are "related" or "unrelated." *Hensley,* at 437 n.12.

In the present case the valets prevailed on all claims except liquidated damages. The liquidated damages claim was related to the claim for compensatory damages. It was authorized by the same statute. 29 U.S.C. § 216(b). The evidence and arguments were identical. The only difference was that there existed a good faith defense under 29 U.S.C. § 260 to the liquidated damages claim, and Henry's established the defense at trial. It was within the sound exercise of the trial court's discretion to hold that the claims were related and to award fees for the entire cause.

Henry's also maintains that the award of fees should be modified because it was disproportionate to the amount of damages. However, without explanation or authority, Henry's excludes the amount of prejudgment interest awarded from its calculation. The actual figures are: $56,377.68 in damages (including interest), $45,000 in

attorneys' fees, and $2,131.43 in costs. The amount of allowed attorneys' fees was not disproportionate to the total amount of damages awarded.

Henry's contention that the court erred by awarding costs is also without merit. An award of costs is expressly authorized in an action for payment of minimum wages. 29 U.S.C. § 216(b).

We affirm and allow reasonable attorneys' fees ($7,500) and costs ($2,095.60) on appeal, a total of $9,595.60. We have reduced the attorneys' fee claimed by the valets on appeal ($19,969) substantially because our examination of the detailed time sheets shows that a large portion of time was spent in garnishment and other judgment execution efforts, a great deal of time was spent on settlement discussions and proceedings that apparently were related to financial stability concerns more than to the merits of appeal, and the respondents' brief on appeal was based very substantially on their trial brief.

COLEMAN, A.C.J. (concurring in part, dissenting in part)—The majority agrees that existing federal regulations, 29 C.F.R. §§ 531.52, .55(a),[9] authorize employment agreements in which all tips become the property of the employer. Such agreements are known as the "tip back" method of compensation, which is the method by which

---

[9]29 C.F.R. § 531.52 provides in part: "In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer. Only tips actually received by an employee as money belonging to him which he may use as he chooses free of any control by the employer, may be counted in determining whether he is a 'tipped employee' within the meaning of the Act and in applying the provisions of section 3(m) which govern wage credits for tips."

29 C.F.R. § 531.55(a) provides in part: "[W]here the employment agreement is such that amounts presented by customers as tips belong to the employer and must be credited or turned over to him, the employee is in effect collecting for his employer additional income from the operations of the latter's establishment. . . . [P]lainly the employee is not receiving tips within the meaning of section 3(m) and 3(t). The amounts received from customers are the employer's property, not his, and do not constitute tip income to the employee."

Henry's valets were paid. These regulations were promulgated under the Fair Labor Standards Act of 1938 (FLSA). Prior to 1974 such agreements were clearly enforceable and were not deemed to conflict with section 203(m) of the FLSA, which at that time provided in pertinent part:

> In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 50 per centum of the applicable minimum wage rate, except that in the case of an employee who (either himself or acting through his representative) shows to the satisfaction of the Secretary that the actual amount of tips received by him was less than the amount determined by the employer as the amount by which the wage paid him was deemed to be increased under this sentence, the amount paid such employee by his employer shall be deemed to have been increased by such lesser amount.

29 U.S.C. § 203(m). This arrangement is known as the "tip credit" method of compensation and was not the method by which Henry's valets were paid.

In 1974, section 203(m) of the FLSA was amended and now reads in pertinent part:

> In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 40 per centum of the applicable minimum wage rate, except that the amount of the increase on account of tips determined by the employer may not exceed the value of tips actually received by the employee. The previous sentence shall not apply with respect to any tipped employee unless (1) such employee has been informed by the employer of the provisions of this subsection, and (2) all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m). The most significant changes decreased the amount an employer could credit against his obligation

to pay the minimum wage (from 50 percent to 40 percent of the hourly rate), required employers to inform employees of the tip credit regulation, and mandated that all tips received by the employee (exempting pooling agreements) be retained by the employee. The majority now holds that C.F.R. §§ 531.52 and .55(a) conflict with section 203(m) as amended, rendering those regulations void and tip back agreements unenforceable.

The majority concedes that section 203(m) does not clearly disallow tip back agreements. It further acknowledges that "[n]either the language of section 3(m) as amended nor case law clearly nullifies the regulations or invalidates tip agreements." Majority opinion, at 96. Thus, the majority treats this issue as one of first impression and then reaches out for a result not at all compelled or even suggested by the language of the amendment.

It is undisputed that prior to the 1974 amendment, section 203(m) did not prohibit tip back agreements. Nothing in the amended section either refers to or expressly forbids such agreements. In fact, both before and after the amendment, section 203(m) only purports to regulate wage agreements of tipped employees. Historically employees under tip back agreements are not tipped employees. *See* 29 C.F.R. §§ 531.55, .59. *See also Hodgson v. Bern's Steak House, Inc.,* 20 Wage & Hour Cas. 261, 268 (M.D. Fla. 1971). A legislature is presumed to be aware of and to have adopted judicial constructions of a statute, unless it affirmatively expresses a contrary intent. *Blitz v. Donovan,* 740 F.2d 1241, 1245 (D.C. Cir. 1984); *see also State v. McCullum,* 98 Wn.2d 484, 492–93, 656 P.2d 1064 (1983). Moreover, it is the court's obligation to reconcile different statutes pertaining to the same subject matter. *Jones v. St. Louis–San Francisco Ry.,* 728 F.2d 257, 262 (6th Cir. 1984); *King Cy. v. Taxpayers,* 104 Wn.2d 1, 8–9, 700 P.2d 1143 (1985). Thus, when amending a statute, if Congress intends to expressly disallow a practice that existing interpretations expressly allowed, courts expect Congress to specify in explicit language its intent to disallow such practices. *See*

*Babcock v. School Dist. 17,* 57 Wn.2d 578, 580–81, 358 P.2d 547 (1961) (existing statute is not repealed by subsequent legislation unless legislative intent was to repeal the earlier act or both acts are clearly inconsistent and repugnant and cannot be reconciled). Section 203(m) as amended can be harmonized with the C.F.R. sections at issue by interpreting section 203(m) no more broadly than its express application to tip credit agreements and by continuing to give effect to 29 C.F.R. §§ 531.52 and .55(a), which permit tip back agreements.

The majority attempts to justify its result by classifying Henry's valets as tipped employees in an attempt to bring them within the scope of the 1974 amendment, which is expressly limited to regulating the wages of tipped employees. I reject this approach. In the first place, prior to the amendment, section 203(m) was not construed to be in conflict with the regulations permitting tip back agreements. There is nothing in the language of the amendment to suggest that Congress intended to broaden the scope of the term "tipped employee" to include what was previously excluded, *i.e.,* employees under tip back agreements. Under the regulations, employees who return all of their tips to their employer are not considered tipped employees because no part of their income derives from tips. 29 C.F.R. §§ 532.55, .59. *See also* 29 U.S.C. 203(t) ("tipped employee" is one who receives more than $30 per month in tips). Thus, there is no reason now to suddenly find, as the majority does, that employees under tip back agreements are tipped employees.

The majority adopts a "customer's intent" analysis to determine whether an employee is a tipped employee. A customer's intent, however, to direct a tip toward a particular service person has nothing to do with whether a tip back arrangement between the employee and employer is legal, much less whether Congress intended to disallow such agreements by regulating tip credit agreements. The customer's intent is irrelevant. In an effort to buttress its position, the majority looks to the legislative history of the

1974 amendment, which in part provides: "Whether a tip is to be given and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity." S. Rep. No. 690, 93d Cong., 2d Sess. 42 (1974). If the definition of a tip is determined by the customer's intent, then why does section 203(m) as amended expressly provide that tip pooling agreements are not disallowed? 29 U.S.C. § 203(m) ("this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips"). A customer may well decide to tip a specific amount based upon the customer's preference for a particular employee. In fact, it is not uncommon for customers to request seating in a area served by a particular favored employee. If tip back agreements are disallowed because, as the majority argues, they convert the tip into the employer's receipt "by an agreement that is unknown to the customer", then why are tip pooling agreements, which are just as unknown to the customer, also not disallowed?

The majority contends the word "generally" in the tip definition ("generally [the customer] has the right to determine who shall be the recipient") justifies exempting tip pooling agreements from the definition; why is it not just as reasonable to say the qualification "generally" also justifies exempting tip back agreements? It is apparent that the majority has allowed its legal analysis to be influenced by its personal dislike of tip back agreements, a dislike which I share to some extent. The correct legal analysis, however, in the absence of a clear indication that Congress intended to disallow this practice, is to continue defining tipped employees as those who retain tips. Under a tip back agreement, employees earn an hourly wage and no portion of their income is derived from tips; there being no expression of Congressional intent to disallow such agreements, employees who do not retain their tips are not tipped employees. If employees working under tip back agreements are not tipped employees, then the 1974 amendment

cannot affect those agreements since it applies only to wage agreements of tipped employees.

Finally, the majority argues that the purpose of the 1974 amendment was to require that an employee retain all tips. There is no support for this astonishing conclusion. The amended language is designed to regulate the situation in which employers take a tip credit toward their obligations to pay the minimum wage. In amending section 203(m), Congress prohibited employers from collecting tips from employees if the employer intended to take a tip credit. If the employer takes no credit and pays the full minimum wage, the section is inapplicable. Congress may wish by legislation to adopt a policy such as the one suggested by the majority, but it has nowhere expressed its intent to disallow tip back agreements, and it is not within the province of this court to substitute its judgment for that of Congress in this area.

Because of my view that the 1974 amendment of section 203(m) regulates tip credit arrangements and does not apply to tip back agreements, I would uphold the validity of the tip back agreement between Henry's and the valets. I would, therefore, reverse the judgment of the trial court and remand with instructions to enter judgment in favor of Henry's. The issue of attorney's fees to respondent under those circumstances would be moot. Because of Judge Williams' partial dissent, I note that I agree with Judge Winsor's analysis as to the propriety of allowing evidence on the good faith defense and his affirmance of the denial of liquidated damages.

With the exception noted, I respectfully dissent.

WILLIAMS, J. (concurring in part, dissenting in part)—I concur with the determination that the tip agreement between Henry's Off Broadway and its valets is void and unenforceable, but I dissent from the conclusion that the trial court did not err in allowing Henry's to present evidence of its good faith.

Under the Fair Labor Standards Act, 29 U.S.C. § 216(b), any employer who violates the minimum wage provisions of the act shall be liable to the affected employees in the amount of their unpaid wages plus an additional equal amount as liquidated damages. To recover liquidated damages, an employee need not establish his employer intentionally violated the act; once an employee has shown a violation, the employer has the burden of proving good faith and reasonable grounds under 29 U.S.C. § 260. *Williams v. Tri–County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir. 1984).

If an employer shows to the satisfaction of the court that his actions were in good faith and that he had reasonable grounds for believing he was not in violation of the act, the court may, in its discretion, award no liquidated damages or only a portion thereof. "Good faith" under 29 U.S.C. § 260 is an affirmative defense which an employer must plead and prove. *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579, *modified on other grounds,* 776 F.2d 265 (11th Cir. 1985); *Pierce v. Concrete Prods. & Supply Co.*, 186 So. 2d 751, 755 (Miss. 1966); *see also* 29 U.S.C. § 258.

Federal Rule of Civil Procedure 8(c) requires a party to affirmatively plead any matter constituting an affirmative defense. *See also* CR 8(c). Failure to plead an affirmative defense generally results in the waiver of that defense and its exclusion from the case. 5 C. Wright & A. Miller, *Federal Practice* § 1278, at 339 (1969); *Rainier Nat'l Bank v. Lewis,* 30 Wn. App. 419, 422, 635 P.2d 153 (1981). Henry's did not affirmatively plead good faith in its answer, though it did plead five other affirmative defenses; instead, it argues that its general denial of the valets' complaint for liquidated damages was enough to put good faith at issue. A general denial is not sufficient to raise an affirmative defense. 2A J. Moore, J. Lucas & G. Grotheer, *Federal Practice* § 8.27(3), at 8–182 (2d ed. 1987).

The purpose behind the rule for affirmative defenses is to put plaintiff on notice well in advance of trial that the defendant intends to present the defense. *State Distribs.,*

*Inc. v. Glenmore Distilleries Co.,* 738 F.2d 405, 410 (10th Cir. 1984); *see also Mahoney v. Tingley,* 85 Wn.2d 95, 100, 529 P.2d 1068 (1975). There is nothing in the record establishing that the valets had notice Henry's would present the good faith defense at trial. In their trial brief, the valets argued Henry's had waived the defense; Henry's trial brief did not contest the assertion, nor did it discuss the defense. Accordingly, the trial court abused its discretion in allowing Henry's to raise good faith at trial and present evidence on the issue.

Moreover, nothing in the record proves Henry's acted in good faith. In order to establish the defense, an employer must prove the act or omission complained of was (1) in good faith, (2) in conformity with, and (3) in reliance on an administrative regulation, order, ruling, approval or interpretation of an agency of the United States. 29 U.S.C. § 258, 260; *Olson v. Superior Pontiac–GMC, Inc., supra.* Good faith is intended to apply only where an employer innocently and to his detriment followed the law as laid down to him by government agencies, without notice that such interpretations were claimed to be erroneous or invalid. *Clifton D. Mayhew, Inc. v. Wirtz,* 413 F.2d 658, 661 (4th Cir. 1969). 29 C.F.R. § 790.15 provides that good faith requires the employer to have honesty of intention and to be without knowledge of circumstances which ought to put him on inquiry.

Henry's good faith defense was based on its reliance on 29 C.F.R. §§ 531.52 and .55(a), which sanction employment agreements in which all tips become the property of the employer, and its claim that the 1974 amendment to section 3(m) of the FLSA did not invalidate those regulations. Prior to Henry's implementation of its tip agreement, the Wage and Hour Division of the Department of Labor issued several opinion letters stating that the amendment superseded the regulations and rendered such agreements illegal. That interpretation was also upheld in *Richard v. Marriott Corp.,* 549 F.2d 303 (4th Cir.), *cert. denied,* 433 U.S. 915, 53 L. Ed. 2d 1100, 97 S. Ct. 2988 (1977). Despite

clear notice the agreements were considered invalid, Henry's went forward. Henry's put its hand into the valets' pockets and took money generously given in the belief it would be the valets' to keep; it did not act in good faith.

Liquidated damages in an amount equal to the unpaid wages are mandatory, *Joiner v. Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987), but an award of liquidated damages and prejudgment interest in the same suit is not proper. *Brock v. Shirk*, 833 F.2d 1326, 1331 (9th Cir. 1987); *Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir. 1986). Therefore, the award to the valets should be $32,192.67 in damages plus an additional $32,192.67 in liquidated damages, for a total recovery of $64,385.34.

Reconsideration denied September 12, 1988.

Review granted by Supreme Court January 10, 1989.